FEE PAID

FILED

2023 JUL 20  PM 2: 40

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY___ rsm

Julian Brew (SBN 150615)
julian@cypressllp.com
Jared L. Watkins (SBN 300393)
jared@cypressllp.com
**CYPRESS LLP**
11111 Santa Monica Boulevard, Suite 500
Los Angeles, CA 90025
Telephone:    424-901-0123
Facsimile:    424-750-5100

Attorneys for Plaintiff-Relator,
**RELATOR LLC**

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>     Plaintiff,<br><br>*ex rel.* **RELATOR LLC**, a California limited liability company,<br><br>     Relator,<br><br>     v.<br><br>**MICHAEL DELEHANTY,** an individual; **GARY MARTELL JR.,** an individual; **MOUNTAIN WEST FINANCIAL, INC.,** a California corporation; and DOES 1-10,<br><br>     Defendants. | Case No. **2:23-CV-05881-DSF-AS**x<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT**<br><br>**FILED *IN CAMERA* UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**<br><br><u>**DO NOT PLACE ON PACER**</u><br><br>**JURY TRIAL DEMANDED** |

COMPLAINT

Plaintiff RELATOR LLC ( "Plaintiff") complains of **MICHAEL DELEHANTY** ("Delehanty"), an individual, **GARY MARTELL JR.** ("Martell"), an individual, **MOUNTAIN WEST FINANCIAL, INC.** ("MWF"), a California corporation, and DOES 1-10 (collectively "Defendants").

## JURISDICTION & VENUE

1.    This Court has subject matter jurisdiction over the Plaintiff's claims brought under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732.

2.    This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Central District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.[1]

3.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the basis of this Complaint occurred in the Central District of California. Plaintiff the United States is also located in the Central District of California.

4.    Relator's claims and this Complaint are not based on any prior public disclosures of the fraud or transactions in a criminal, civil, or administrative hearing in which the Government or its agent is a party, a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there was any public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

---

[1] MWF operates throughout California, and is headquartered in Redlands California, within the Central District. MWF has formed an operating entity in California and transacts business in California.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

**INTRODUCTION AND SUMMARY**

5.     In this matter a mortgage lender used his lending business to misappropriate from the US Federal government's Paycheck Protection Program ("PPP"), embezzling millions of dollars in relief money. To obtain the loan the Defendants presented many falsified loan documents to the SBA. This fraud scheme drained the PPP depriving deserving businesses and workers in eligible companies desperately needed aid. Defendants did not need the loan, they simply took advantage: Delehanty's lending business was booming; they had no economic need. This is even assuming the loan proceeds were used to support payroll, as promised by Defendants, which they were not. They did not need the money to begin with, and then the theft was made permanent with loan forgiveness. Doubling down on the scheme, Defendants falsified additional documents that they presented to the government to obtain total loan forgiveness, billing millions to the US taxpayer, draining the program of aid funds. Now that program is running dry.

6.     Delehanty used his mortgage lending business, Mountain West Financial, Inc. to apply for and receive a PPP loan totaling **$4,537,000.00**, purportedly to cover payroll costs. Yet, MWF and its owner Delehanty:

    a. Falsified loan eligibility;

    b. Falsified business type and industry type;

    c. Falsified the use of the loans on authorized expenses;

    d. Falsified the economic necessity for the loans; and

    e. Falsified the need for loan forgiveness.

7.     Many Americans lost their jobs during the pandemic and many small businesses closed, because the PPP money ran out. **Meanwhile, on October 2, 2020, after receiving millions in PPP loans, Defendant Gary Martell Jr. bought himself a luxury 1,006 square foot vacation condominium on Lake Arrowhead, California for approximately $287,126.00.** Many people are still losing their jobs as a result of the Pandemic. At the same time…this company and its executives

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1   bilked the PPP for millions of dollars in aid funds. They were not allowed to take
2   this money. They did not need it. They did not return it. They used the money on
3   unauthorized expenses. As a curtain act of corporate greed and misappropriation,
4   they obtained total loan forgiveness, billing millions of dollars onto the taxpayers.

5        8.   <u>Obvious Regulations Regarding Money Lenders</u>. MWF was ineligible
6   to obtain the PPP loan because MWF is a <u>money lending</u> business. While the vast
7   majority of American industries are allowed to take PPP loan, a very few select
8   industries are not allowed. One such type of business is money lenders. The
9   rationale is that money lenders have money on hand to cover their worker costs, and
10  money lenders are not suffering as much as other business types, not to mention
11  going into debt would not be as necessary if businesses could financially survive.

12       9.   <u>Falsified Business Type and Industry Type</u>. In their PPP loan
13  application the Defendants lied about their business type and industry type. MWF is
14  a direct mortgage lender. However, in their application they purported to be "Real
15  Estate Credit", in order to hide the fact that they are <u>direct money lender's</u> and are
16  specifically disallowed from applying. It is highly unlikely they would not know
17  their own business, or that they would confuse a critical distinction between being a
18  real estate service provider with a lender. Even taken alone this incorrect self-
19  reported classification is probably a deception rather than a mistake. The CEO
20  founded the company and well versed in the fields of lending and banking, which
21  are the words they used to describe themselves on their own website. Furthermore,
22  on MWF's own Articles of Incorporation with the California Secretary of State they
23  listed their business type as "Residential Mortgage Loans." Taken by itself, this
24  incorrect reporting is likely a fraud. But taken in the context of the other incorrect
25  information provided, it is evident that Defendant Delehanty and his company
26  understood they were involved in fraud and orchestrated its various components
27  deliberately.
28

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

3

COMPLAINT

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

10.    <u>Use of PPP Funds on Unauthorized Items</u>. In the months that followed the PPP loans, the Defendants used the fund, but not all on allowable payroll costs. The payroll amounts were beyond what is allowed in order to receive a bigger loan. But, the money was spent on something. Discovery will reveal exactly where the money was used, but ultimately it does not matter. At the very least it was spent on unauthorized payroll expenses which break the PPP rules. At the worst, the money was spent on things not even related to payroll.  Although the theft of public money is worse when used on business expenses which are not disclosed or authorized, or even personal items, any expenditure beyond the cap was prohibited. However, ultimately any and all use of the money was unauthorized because the loan itself was not allowed to begin with. Defendants are in a prohibited industry. Not a dollar of these precious and scarce loans was meant FOR THEM. It was all ill-gotten money. Funding a luxury spending spree with American tax dollars being squandered to subsidize the already opulent lifestyle of an unscrupulous businessman, adds insult to injury. The American people have a right to be angry.

PPP funds are:

NOT authorized for direct lenders;

NOT authorized for a business which has no economic need for the loan;

NOT authorized for a business to use the loan for expenses of a different company;

NOT authorized for owner draws or distributions; and

NOT authorized for businesses or individuals who fraudulently submit applications and supporting documents.

11.    <u>No Economic Necessity and Mortgage-Backed-Securities (MBS)</u>. The PPP was made to help struggling businesses pay their workers. It is not a free excuse to raid government coffers by wealthy and cunning businessmen. MWF did not need the loans – there was no "need" or "economic necessity" to pay

COMPLAINT

1   Defendant's payroll expenses.[2] MWF did not and cannot show any decline in
2   revenue during the pandemic. In fact, during this time period, mortgage lenders
3   experienced record profits. This is because of the housing price increases and
4   housing crisis. It is also because of the Federal government's policy to purchase
5   Mortgage Backed-Securities (MBS), which provided mortgage lenders like MWF a
6   steady source of high income.[3]

7          12.    Indeed MWF was highly profitable when they took the loan in 2020.
8   They were also highly profitable in 2021 when they asked for loan forgiveness.
9   MWF currently has upwards of $61.5 million in annual revenue. To achieve this
10  current level of revenue, MWF required large capital sources in 2020 to make the
11  many millions of dollars in loans from which it is now reaping interest income. At
12  the time of the loan, MWF had tens of millions if not hundreds of millions of
13  dollars in capital. Yet Defendant falsely certified it had "economic uncertainty" so
14  it could take financial assistance from the US taxpayer.

15         13.    MWF was named a "Scotsman Guide Top Mortgage Lender for the
16  7th year in a row" in 2019. Then, in 2020 MWF was named a "Scotsman Guide
17  Top Mortgage Lender for the 8th year in a row." Additionally, in 2020 MWF was
18  named a "Top Producing Lender in 2020 by the California Housing Finance
19  Agency (CalHFA) for the 3rd year in a row." MWF did not need the money.
20  Defendants took advantage of the opportunity and used it as a windfall.

21         14.    In 2020 and in 2021, the exact same time period of the loans, MWF
22  actually expanded its business. It was not in financial trouble. Especially in any

23  ───────────────────
24  [2] MWF is not a small business in dire financial straits, but rather a well-financed finance
    company Public information shows their revenue was not declining, and their own
25  statements indicate massive growth and profits. Defendant cannot show "economic
    necessity" in needing the loans to continue business operations.
26  [3] Agency MBS purchases are issued by the Federal government. The US Federal Reserve
    has a $1.25 trillion program to purchase mortgages which was restarted on March 15.
27  2020 as a result of the COVID-19 crises. This program provided mortgage lenders with a
    guaranteed way to sell their mortgage assets. Mortgage lenders like Defendant benefited
28  greatly from this program.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1  financial trouble which jeopardized its payroll or ability to make rent. It was quite

2  the opposite. For example, in 2021, after MWF received its PPP loans it opened a

3  new branch in Minnesota. It is absurd that they would pretend to need financial

4  assistance from the government during this period of economic expansion.

5       15.   <u>Direct Lending</u>. MWF was <u>ineligible</u> to receive any SBA loans

6  whatsoever. While almost every industry type is allowed to take PPP loans, a very

7  few select number of industries are not permitted, including mortgage lenders like

8  MWF. The rationale is that money lenders are cash rich and have ample financial

9  resources to pay their own payroll expenses, therefore they should not take away

10  money from small businesses which don't have ready access to liquid funds. The

11  Defendant's business makes it ineligible for SBA loans because it is a **money**

12  **lender**.[4] MWF is a direct lender that provides money loans to consumers, for

13  mortgages. MWF's own website touts its various loan products. It proudly and

14  repeatedly refers to itself as a bank and mortgage lender. However, on its

15  application it excludes any mention of its banking and lending activities. Therefore,

16  Defendant's certification was false because **they <u>most definitely are</u> the type of**

17  **business/industry which is prohibited from SBA loans**.

18       16.   <u>Money Not Returned</u>. The loan was taken by a business which was not

19  allowed to take even one penny in loans, let alone millions of dollars. The

20  **$4,537,000.00** in funds should have been returned immediately. These loans should

21  never have been sought in the first place. Yet the Defendants went further by

22  obtaining total loan forgiveness, billing the US taxpayers millions of dollars.

23  *Defendants have not returned the loan proceeds.*

24       17.   <u>Further Falsification on Loan Forgiveness</u>. Defendants falsified further

25  documents to receive loan forgiveness. Defendants had to attest as to the use of the

26  funds and the amount used on authorized purposes. The loan could not have been

27  used on authorized purposes because OQF could not comply with the requirements

28

---

[4] The Defendant is a direct lender. They specialize in home mortgage loans.

COMPLAINT

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1  of forgiveness given its business type. So Defendants also lied on their forgiveness

2  documents and application.

3      18.   <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and

4  intentionally made many materially false statements to the government and bank to

5  obtain the loans.

6      19.   Plaintiff brings this action as relator on behalf of the United States to

7  recover treble damages, civil penalties, and costs under the False Claims Act

8  ("FCA"), 31 U.S.C. §§ 3729-33. Plaintiff gave notice of its intent to file and full

9  disclosure of the evidentiary basis to the Department of Justice ("DOJ").

10  **THE PARTIES**

11      20.   Plaintiff is a California limited liability company with its principal

12  place of business in Los Angeles, California.

13      21.   Defendant Delehanty is an individual and, at all relevant times herein,

14  is and was the Chief Executive Officer of MWF.

15      22.   Defendant Martell is an individual and, at all relevant times herein, is

16  and was the President of MWF.

17      23.   Defendant MWF is a California corporation formed in 2005 with its

18  principal place of business, 1209 Nevada St Redlands, CA 92374.

19      24.   MWF is a mortgage lender which directly provides: Conventional,

20  Jumbo, Government, and Non-Qualifying money loans to people in return for an

21  ownership interest in their homes.

22      25.   The true names and capacities, whether individual, partner, associate,

23  corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of

24  them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such

25  fictitious names. Plaintiff is informed and believes and thereon alleges that each

26      26.   Defendant designated herein as a "DOE" is legally responsible in some

27  manner for the events and happenings herein mentioned. Plaintiff will seek leave of

28  Court to amend this Complaint to reflect the true names and capacities of said

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

DOES, and add appropriate charging allegations against said DOES when their identities have been ascertained. Plaintiff is informed and believes that each of the DOE Defendants were responsible in some manner for the injuries and damages alleged herein, and/or for the wrongful acts of some or all of the Defendants.

27.    Plaintiff is further informed and believes that each of the Defendants whether specifically named or named as a DOE, was an agent, employee, servant and/or representative of each of the remaining Defendants, and, in doing or failing to do the things alleged herein, was acting within the course and scope of said agency, employment, service and/or representation.

28.    Plaintiff is further informed and believes that each of the Defendants, whether specifically named herein or named as a DOE, approved, ratified, and/pr acquiesced in the acts and omissions of each of the remaining Defendants.

29.    Plaintiff is further informed and believes that each of the Defendants herein, whether named as DOES or otherwise, acted in concert, agreement and conspiracy with the other Defendants for the common purpose of engaging in a scheme to defraud as alleged below.

**THE CARES ACT AND PAYCHECK PROTECTION PROGRAM**

30.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for eligible individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

31.    The CARES Act authorized loans to eligible small businesses struggling to pay employees and stay in business as a result of the devastating effect of the COVID-19 pandemic and resulting restrictions.

32.     Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

33.     On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) was enacted to provide additional funding and authority for the PPP. On June 5, 2020, the Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

34.     Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend all loan proceeds only for employee compensation, rent or mortgage, and certain other specified expenses. Depending on their use of the loan proceeds as certified, they could qualify for loan forgiveness, up to the full amount of the loan.

35.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or "Second Draw" loan, an eligible business (through its authorized representative) had to sign and submit a PPP loan application (SBA Form 2483) online through the lender's platform. The PPP loan application (SBA Form 2483) required the business (through its representative) to acknowledge the PPP program rules and make certain certifications in order to be eligible to obtain the PPP loan, including certifying that their certifications were true.

36.     Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the lender, it funded the PPP loan with its own funds, which were 100% guaranteed by the SBA.

37.     After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

9
COMPLAINT

1  submitted to the SBA, the Lender's Application - Paycheck Protection Program

2  Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan.

3  For a PPP loan to be approved, the Lender was required to Answer Yes to the

4  following questions in the Lender's Application - Paycheck Protection Program

5  Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General

6  Eligibility to receive a PPP Loan:

| | | Yes | No |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | | |

23      SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its

24  PPP loan application (SBA Form 2483), the PPP borrower's false certification

25  caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's

26  Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that

27  contained the PPP borrower's False Statement.

28

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

38.    SBA Form 2483 includes the following certification, among others: "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (the "Understanding Certification").

39.    SBA Form 2483 also includes the following certification, among others: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

40.    SBA Form 2483 also includes the following certification, among others: "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification").

41.    SBA Form 2483 also includes the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification").

42.    SBA Form 2483 also includes the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (the "Worker Retention and Payroll Certification").

43.    SBA Form 2483 also includes the following certification, among others: "During the period beginning on February 15, 2020 and ending on

11

COMPLAINT

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1  December 31, 2020, the Applicant has not and will not receive another loan under

2  the Paycheck Protection Program." (the "Single Loan Certification").

3      44.    SBA Form 2483 also includes the following certification, among

4  others: "I further certify that the information provided in this application and the

5  information provided in all supporting documents and forms is true and accurate in

6  all material respects. I understand that knowingly making a false statement to obtain

7  a guaranteed loan from SBA is punishable under the law, including under 18 USC

8  1001 and 3571 by imprisonment of not more than five years and/or a fine of up to

9  $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a

10  fine of not more than $5,000; and, if submitted to a federally insured institution,

11  under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of

12  not more than $1,000,000" (the "No False Statements Certification").

13      45.    After the borrower submitted a PPP loan application, it was processed

14  by the participating lender. If the PPP loan application was approved, the

15  participating lender funded the loan using its own monies, which were then

16  guaranteed by the SBA. Generally, in the event the borrower defaulted on a PPP

17  loan, the SBA would purchase the borrower's debt from the lender and be

18  responsible for its repayment.

19      46.    Under applicable SBA rules and guidance, recipients of PPP loans

20  could apply to have principal and interest on the PPP loan fully forgiven, meaning

21  that the borrower would owe nothing and would have no obligation to repay the

22  PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that

23  they had "not reduced the number of employees or the average paid hours of [their]

24  employees" during the loan period, that the loan proceeds had been spent on payroll

25  costs and other permitted expenses and that at least 60% of the loan proceeds had

26  been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

27  ///

28  ///

47. Loans could only be used for certain permitted expenses, such as to pay employees' salaries, employee benefits, mortgage interest, rent, utilities or worker protection costs related to COVID19.

48. More specifically, the loan forgiveness application (SBA Form 3508), revised as of July 30, 2021, included the following certifications, among others:

(1) The dollar amount for which forgiveness is requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

- includes payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

(2) I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

(3) The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

13
COMPLAINT

(4)    The Borrower's eligibility for loan forgiveness will be evaluated in accordance with the PPP regulations and guidance issued by SBA through the date of this application.

49.    13 CFR§ 120.110 provides a list of what type of business are INELIGIBLE for SBA loans. This list includes lenders like Defendant …

**"(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)"**

50.    On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.COMMERCE. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. Id.

51.    With respect to the PPP, the January 6, 2021, Interim Final Rule provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts 113, 120 and 121.

*"Are businesses that are generally ineligible for 7(a) loans under 13 CFR120.110 eligible for a PPP loan?"*

**Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n)**

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1    is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise,

2    a business is not eligible for a PPP loan if it is a type of business concern

3    (or would be, if the entity were a business concern) described in 13

4    C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of

5    this rule or otherwise permitted by PPP rules. Businesses that are not

6    generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described

7    further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2,

8    Section A, Chapter 3.

26    ///

27    ///

28    ///

52.     The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter 3 states as follows:

### CHAPTER 3: INELIGIBLE BUSINESSES

**A. TYPES OF INELIGIBLE BUSINESSES**

The SBA Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list may be eligible under limited circumstances, as discussed below.

1.  Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may be eligible). 13 CFR § 120.110 (a)
2.  Businesses Engaged in Lending 13 CFR § 120.110 (b).
    a.  SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investment, or to an otherwise eligible business engaged in financing, factoring, or investment not related or essential to the business. This prohibits SBA Loans to:
        i.   Banks;
        ii.  Life Insurance Companies (but not independent agents);
        iii. Finance Companies;
        iv.  Factoring Companies;
        v.   Investment Companies;
        vi.  Bail Bond Companies; and
        vii. Other businesses whose stock in trade is money.
    b.  The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:
        i.   A pawn shop that provides financing is eligible if more than 50% of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.
        ii.  A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50% of its revenue is from financing its sales.
        iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.
        iv.  A check cashing business is eligible if it receives more than 50% of its revenue from the service of cashing checks.

Effective October 1, 2020                                          Page 141

# DEFENDANTS' FRAUD

53.     During round 1 of the paycheck protection program, Defendant MWF applied for a PPP loan for **$4,537,000.00**. It was approved on April 14, 2020, by the

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

SBA for the full amount, which was disbursed. The loan was facilitated by Western Alliance Bank. Defendant received 100% of the approved amount. On its application for this loan, Defendant stated that it had 278 employees for which it needed the loan. This loan was forgiven on May 19, 2022.

54.     MWF admits to being a direct lender on its website, and through its licensure and public statements about its products, yet not on its PPP loan application and supporting documents. MWF is expressly prohibited from receiving SBA loans, including PPP loans. MWF's CEO, Delehanty, is a sophisticated, experienced businessman. He knew  about the restrictions. The legal and financial experts he has hired over the years would have known this. Martell. intentionally broke these clear rules knowing what he was doing. He has navigated the highly regulated business of lending for decades since founding the company. He has successfully expanded the mortgage company and would have had to manage and investigate the many regulations encountered along the way. He would have quickly discovered that these loans were not permitted, especially given the amounts involved and the expertise and capabilities of the people working in his company.

55.     In addition to applying any applicable business type ineligibility rules, all borrowers should carefully review the required Economic Certainty certification on the Borrower Application Form  stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

56.     There are many kinds of fraudulent actors. While some are opportunistic lone operators, making up businesses or bands of hucksters manufacturing many fake payroll accounts, the CEO fraudster is among the most dangerous and harmful. If a CEO decides to break the law with or without the consent of their company, they might be able to use their advanced knowledge of business and considerable professional acumen to great effectiveness, maximize

1   fraud, far beyond the abilities of the average fraudster. If the company is also

2   complicit, this makes the fraud even more effective and difficult to detect. The

3   problems of CEO and corporate fraud are very detrimental to the PPP, and the

4   extent of the damage done may only just be starting to reveal itself. Part of the

5   reason is that they did more damage, and were able to conceal it better.

6        57.    MWF abused the PPP program, from misrepresenting its economic

7   need for the loan to willfully ignoring its ineligibility, to maximizing the amount of

8   the loan and then obtaining loan forgiveness. Discovery will reveal where the

9   millions in PPP funds were actually spent, but what is obvious is that Defendants

10   *did not need any money from US taxpayers*. The business was lending other people

11   money. MWF is and was highly profitable during the pandemic, just like most in

12   their industry. MWF did not suffer any business loss and certainly had the money to

13   pay their own worker wages. Their "stock in trade" is money and business was

14   booming.

15        58.    Defendants signed the loan applications, thereby endorsing the

16   Understanding Certification, which means that they agreed that they understood the

17   rules and guidelines of the PPP, including, without limitation the rules regarding

18   use of proceeds and the certifications made.

19        59.    The proceeds of the PPP Loans were not and could not have been used

20   only for authorized purposes consistent with the PPP Rule, because, among other

21   things, the Defendant was obviously not allowed to take PPP loans because of their

22   industry type - money lenders. Therefore, when Defendants made the Use of

23   Proceeds Certification, the certification was false.

24        60.    The proceeds of the PPP Loans were not necessary to support the

25   ongoing operations of MWF. The company's enjoyed record high business

26   achievements since 2020 until today. It is no secret that mortgage lenders, like the

27   Defendants' were highly profitable during the housing market price increases and

28   high demand in 2020 and 2021. This company had considerable financial resources

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0325

1    to pay its own workers, assuming that is where the money was spent rather than
2    into the pocket of the CEO and its executives. Therefore, when Defendants made
3    the Economic Necessity Certification, the certification was false.

4        61.    The PPP loan money was only allowed to be used on authorized
5    expenses. The proceeds of the PPP Loan were not permitted to be used to pay
6    business costs for a business in the lending industry, therefore when Defendant
7    made the Worker Retention and Payroll Certification, the certification was false.

8        62.    By virtue of the above false statements, when Defendants made the No
9    False Statements Certification, that certification was false.

10       63.    The Defendants actively pursued and obtained loan forgiveness.
11   Because MWF is prohibited from obtaining any PPP loans, its representation on its
12   forgiveness application, that it spent 100% of the loan proceeds on eligible
13   expenses was not truthful. The SBA would not have forgiven the loans if they knew
14   Defendants' certifications described above were false. They also would not have
15   forgiven the loans if they knew the proceeds had been used to increase profits
16   instead of paying their employees.

17       64.    As a result of the forgiveness, Defendants have not repaid the loan and
18   have kept the proceeds, and the loan has been repaid with money from taxpayers,
19   including the small businesses and owners who were supposed to receive the PPP
20   funds instead of repaying a profitable mortgage lender's loan that it never should
21   have received, let alone had forgiven.

22                   **THE FALSE CLAIMS ACT**

23       65.    The False Claims Act prohibits fraudulent conduct in connection with
24   federal programs, including the knowing submission of false claims for payment to
25   the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability
26   may attach if the omission renders those representations misleading. 41. 31 U.S.C.
27   § 3729(a)(1)(A) and (B) of the FCA provide that:

28       (1) . . . any person who—

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1    (A) knowingly presents, or causes to be presented, a false or fraudulent

2  claim for payment or approval; [or]

3    (B) knowingly makes, uses, or causes to be made or used, a false

4  record or statement material to a false or fraudulent claim,

5    . . .

6    (G) knowingly makes, uses, or causes to be made or used, a false

7  record or statement material to an obligation to pay or transmit money or property

8  to the Government, or knowingly conceals or knowingly and improperly avoids or

9  decreases an obligation to pay or transmit money or property to the Government, is

10  liable to the United States Government . . .

11    31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

12    42. The scope of a false or fraudulent claim is to be broadly construed.

13  As used in the FCA, a "claim"

14    (A) means any request or demand, whether under a contract or

15  otherwise, for money or property and whether or not the United States has title to

16  the money or property, that—

17    (i) is presented to an officer, employee, or agent of the United States;

18  or

19    (ii) is made to a contractor, grantee, or other recipient, if the money or

20  property is to be spent or used on the Government's behalf or to advance a

21  Government program or interest, and if the United States Government—

22    (I) provides or has provided any portion of the money or property

23  requested or demanded; or

24    (II) will reimburse such contractor, grantee, or other recipient for any

25  portion of the money or property which is requested or demanded; . . .

26    31 U.S.C. § 3729(b)(2) (2020).

27    66.    A person who violates the False Claims Act during the time period at

28  issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1   which the United States Government sustains because of the act of that person." 31

2   U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part

3   85, Civil Monetary Penalties Inflation Adjustments for 2022 published at:

4   https://www.govinfo.gov/content/pkg/FR-2022-05-09/COMMERCE/2022-

5   09928.COMMERCE.

**FIRST CAUSE OF ACTION**

**FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))**

8       67.     Plaintiff alleges and incorporates by reference each and every

9   allegation contained in all prior paragraphs of this complaint.

10       68.     This is a claim for treble damages and penalties under the False Claims

11   Act, 31 U.S.C. § 3729, et seq., as amended.

12       69.     By virtue of the acts described above, Defendants knowingly

13   presented, or caused to be presented, to an officer or employee of the United States

14   government, false or fraudulent claims for payment or approval, in violation of the

15   FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically, each of Defendants' Economic

16   Necessity, No False Statements, Eligibility, Use of Proceeds, Understanding,

17   Worker Retention and Payroll Certifications described above all were knowingly

18   false, and relied upon by lenders and the SBA in approving the PPP Loans. Their

19   request for forgiveness contained a further misrepresentation that the loans had

20   been used only for authorized purposes.

21       70.     By virtue of the acts described above, Defendants knowingly made or

22   used, or caused to be made or used, false or fraudulent records or statements

23   material to false or fraudulent claims for payment by the Government.

24       71.     The Government and its agents and contractors relied on those false

25   statements in approving and making the loans and subsequently forgiving them,

26   leaving the burden of repayment on taxpayers.

27       72.     Because of the Defendants' acts, the United States sustained damages

28   in an amount to be determined at trial and, therefore, is entitled to treble damages

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

21

COMPLAINT

1    under the FCA, plus civil penalties of not less than $12,537.00 and not more than

2    $25,076.00 for each and every violation arising from Defendants' unlawful conduct

3    alleged herein, and attorneys' fees in an amount to be proven.

**CONCLUSION**

5      73.    Delehanty and his company abused the PPP. They abused the

6    American public. But they did it with the ecumenical prowess of their sophisticated

7    corporations. Corporate abuse of the PPP, while uncommon, has devastated the

8    PPP's ability to help small businesses who actually need the money. The PPP was

9    not meant as a gravy train for opportunistic CEOs. It was not meant as a way for

10   aggressive executives to make their board happy. The PPP was meant for struggling

11   businesses. Now that program is dry. The American people have a right to ask for

12   reconciliation.

26   / / /

27   / / /

28   / / /

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

22

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, qui tam Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 20, 2023                    CYPRESS LLP

                            By:    /s/ Julian Brew
                                   _____
                                   JULIAN BREW
                                   JARED L. WATKINS
                                   Attorneys for Plaintiff-Relator
                                   RELATOR LLC